# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN MANUEL SIMENTAL-LOPEZ,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, FCI MENDOTA,<br><br>Respondent. | Case No. 1:25-cv-00303-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS IN PART AND DISMISS PETITION FOR WRIT OF HABEAS CORPUS<br><br>(ECF No. 8)<br><br>ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT COURT JUDGE AND UPDATE PETITIONER'S ADDRESS |

Petitioner Juan Manuel Simental-Lopez is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges the failure to apply his earned time credits to his sentence under the First Step Act. For the reasons stated herein, the undersigned recommends that Respondent's motion to dismiss be granted in part and the petition be dismissed.

## I.

## BACKGROUND

On June 22, 2017, Petitioner pleaded guilty to possession with intent to distribute methamphetamine and being a felon in possession of a firearm in the United States District Court for the District of Nebraska. On October 20, 2017, Petitioner was sentenced to an imprisonment

term of 151 months. (App. 26–31.[1]) On November 15, 2017, Petitioner admitted federal supervision violations in an unrelated case and was sentenced to an incarceration term of twelve months to be served consecutive to his 151-month term. (ECF No. 8 at 2.)

On March 12, 2025, Petitioner filed the instant federal petition for writ of habeas corpus, asserting that Petitioner should not have any "escape" points added to his PATTERN score based on his federal term of supervised release being revoked. (ECF No. 1.) On May 19, 2025, Respondent filed a motion to dismiss the petition for lack of constitutional standing, ripeness, and failure to state a claim under law. (ECF No. 8). Per the Court's order, (ECF No. 9), on November 3, 2025, Respondent filed documentation with regard to the First Step Act credits Petitioner has earned and whether it is equal to the remainder of Petitioner's sentence, (ECF No. 11). To date, no opposition or statement of non-opposition has been filed, and the time for doing so has passed.

## II.

## DISCUSSION

**A. First Step Act**

"On December 21, 2018, the First Step Act of 2018 ["FSA"], Pub. L. No. 115-391, 132 Stat. 5194, was enacted. The Act implemented a number of prison and sentencing reforms." Bottinelli v. Salazar, 929 F.3d 1196, 1197 (9th Cir. 2019).

> [P]aragraph 102(b)(1) [of the First Step Act] amends § 3624 by adding subsection (g), which is relevant to the Act's creation of an earned time credit system.[2] *Id.* at 5210-13. The Act requires that, within 210 days of its enactment, the Attorney General establish a "risk and needs assessment system" to, broadly speaking, review each prisoner's recidivism risk level, award earned time credit as an incentive for participation in recidivism reduction programming, and "determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624." § 101(a), 132 Stat. at 5196-97. Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to

---

[1] "App." refers to the Appendix filed by Respondent. (ECF No. 10-1.) App. page numbers refer to the page numbers stamped on the bottom right corner.
[2] In contrast to good time credit, earned time credit is awarded for "successfully complet[ing] evidence-based recidivism reduction programming or productive activities." § 101(a), 132 Stat. at 5198.

> prerelease custody or supervised release. § 102(b), 132 Stat. at 5210-13.

Bottinelli, 929 F.3d at 1197–98 (footnote in original).

"There are at least two levels of eligibility for this incentive. A prisoner must first be eligible to earn FSA time credits; those prisoners who are ineligible to earn FSA time credits through recidivism programming are outlined in 18 U.S.C. § 3632(d)(4)(D)." Harleman v. Warden, No. 2:24-CV-00926-BJR-DWC, 2024 WL 4957499, at *2 (W.D. Wash. Aug. 22, 2024), report and recommendation adopted, 2024 WL 4950133 (W.D. Wash. Dec. 3, 2024).

> At the second level of eligibility, a prisoner must be eligible to apply their earned credits to early release; the eligibility requirements for applying earned credits are outlined in 18 U.S.C. § 3624(g)(1) and include that the prisoner "has earned time credits under the risk and needs assessment system ... in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." *Id.* at § 3624 (g)(1)(A).

Harleman, 2024 WL 4957499, at *2. The eligibility requirements for applying earned credits are outlined in 18 U.S.C. § 3624(g)(1), which provides:

> (g) Prerelease custody or supervised release for risk and needs assessment system participants.--
>
> (1) Eligible prisoners.--This subsection applies in the case of a prisoner (as such term is defined in section 3635) who--
>
> (A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;
>
> (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;
>
> (C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and
>
> (D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner--
>
> (I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

3

      (II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that--

        (aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

        (bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

        (cc) the prisoner is unlikely to recidivate; or

     (ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624(g)(1).

  The Federal Bureau of Prisons ("BOP") "developed the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) scoring system, which is a risk assessment tool used to predict the likelihood of recidivism." Stevens v. Jacquez, No. 3:23-cv-01482-AA, 2024 WL 3200546, at *1 (D. Or. June 25, 2024) (citations omitted). The PATTERN scoring system "includes a diverse set of factors to determine the risk of recidivism for BOP inmates; many of these factors are dynamic, meaning that an inmate's risk of recidivism could change with appropriate programming and services or could be affected by the inmate's behavior." United States v. Hanson, 470 F. Supp. 3d 1197, 1203 n.4 (D. Or. 2020) (internal quotation marks and citation omitted).

  **B. Jurisdiction**

  Respondent has moved to dismiss the petition, arguing that: (1) "[t]he relief demand is not ripe for adjudication because it rests upon contingent future events (*e.g.,* earning ETCs that may be applied when his classification level permits) that may not occur as anticipated, or indeed may not occur at all"; and (2) this Court "lacks § 2241 subject matter jurisdiction over Petitioner's grounds, *i.e.,* his challenge under § 2241 to the scoring of his TSR abscond violation and his violent criminal history" because "Petitioner's demand for relief . . . falls outside the

///

4

1  'core' of habeas" as success on Petitioner's claim would not shorten Petitioner's sentence. (ECF
2  No. 8 at 3, 4.[3])

3  "When applying ripeness principles to habeas petitions seeking early release for earned
4  FSA time credits, '[f]ederal courts around the country read Section 3624(g)(1)(A) to mean that
5  the BOP is permitted to apply time credits <u>only</u> once an inmate has earned enough [credits] that
6  equal the remainder of her sentence.'" <u>Wright v. Ricolcol</u>, No. EDCV 24-1863 FWS (AS), 2025
7  WL 2005479, at *5 (C.D. Cal. June 3, 2025) (alterations in original) (some internal quotation
8  marks omitted) (quoting <u>Adkins v. Engleman</u>, No. CV 22-1988 JLS (MRW), 2022 WL
9  14966123, *2 (C.D. Cal. Sept. 8, 2022), <u>report and recommendation adopted</u>, 2025 WL 1863188
10 (C.D. Cal. July 3, 2025)). Here, "Petitioner has earned: (a) 365 FSA Federal Time Credits
11 (FTCs) towards early release and (b) 435 FSA FTCs towards halfway house/home confinement,"
12 which "yields an approximate transition to the community date of January 13, 2026.[4]" (ECF No.
13 11-1 at 1 (footnote in original).) Therefore, as Petitioner has not earned enough credits that equal
14 the remainder of his sentence, he is not eligible to apply any FSA time credits at this time, 18
15 U.S.C. § 3624(g)(1)(A), the claim is unripe, and dismissal is warranted on this ground.

16 Relying on <u>Skinner v. Switzer</u>, 562 U.S. 521 (2012), the Ninth Circuit in <u>Nettles v.</u>
17 <u>Grounds</u>, 830 F.3d 922 (9th Cir. 2016) (en banc) held that if success on a state prisoner's habeas
18 claim would not necessarily lead to his immediate or earlier release from confinement, the claim
19 does not fall within "the core of habeas corpus" and thus, is not cognizable under 28 U.S.C.
20 § 2254. <u>Nettles</u>, 830 F.3d at 935. <u>Nettles</u> explicitly declined to address how the standard
21 suggested in <u>Skinner</u> would apply to habeas petitions under 28 U.S.C. § 2241 brought by federal
22 prisoners. <u>Nettles</u>, 830 F.3d at 931. Therefore, dismissal is not warranted on this ground.

23 In the motion to dismiss, Respondent also appears to argue that Petitioner lacks standing
24 because "[a]s a matter of law, Petitioner is barred demand to ETC award based on his custody

---

26 [3] Page numbers refer to the ECF page numbers stamped at the top of the page.
27 [4] Due to Petitioner's high risk of recidivism (Exh. 1 at 1), Petitioner is not yet able to apply FSA FTCs. Pursuant to P.S. 5410.01, "Ordinarily, inmates considered inappropriate for early transfer to prerelease custody or supervised release…include, but are not limited to, inmates who: [h]ave a high or medium
28 PATTERN recidivism risk level." <u>Id.</u> at 15.

1  classification." (ECF No. 8 at 3.) "According to BOP records, Petitioner has a custody
2  classification of medium, in part based on his history of abscond (escape) from supervision and
3  his history of violence. Pursuant to FSA authorities and related regulations, while he may *earn*
4  FSA ETCs, he cannot *apply* such against his sentence to advance his projected release date. In
5  other words, Petitioner has been determined under the FSA as ineligible to apply ETC sentence-
6  offsets." (ECF No. 8 at 2 (citations omitted).) However, in the petition, Petitioner is challenging
7  his custody classification. Therefore, dismissal is not warranted on this ground.

8  "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider
9  *sua sponte* issues that the parties have disclaimed or have not presented." Gonzalez v. Thaler,
10  565 U.S. 134, 141 (2012) (citing United States v. Cotton, 535 U.S. 625, 630 (2002)). The Court
11  finds that the petition should be dismissed for the reasons set forth below in addition to the
12  ripeness concerns.

13  "The APA [Administrative Procedures Act] provides a cause of action for persons
14  'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency
15  action within the meaning of a relevant statute,' but withdraws that cause of action to the extent
16  that the relevant statute 'preclude[s] judicial review' or the 'agency action is committed to
17  agency discretion by law.'" Reeb v. Thomas, 636 F.3d 1224, 1226 (9th Cir. 2011) (quoting 5
18  U.S.C. §§ 702, 701(a)). "Congress specified in 18 U.S.C. § 3625, entitled Inapplicability of the
19  Administrative Procedure Act, that '[t]he provisions of sections 554 and 555 and 701 through
20  706 of [the APA] do not apply to the making of any determination, decision, or order under [18
21  U.S.C. §§ 3621–3625].'" Reeb, 636 F.3d at 1226 (quoting 18 U.S.C. § 3625). "There is no
22  ambiguity in the meaning of 18 U.S.C. § 3625. The plain language of this statute specifies that
23  the judicial review provisions of the APA, 5 U.S.C. §§ 701–706, do not apply to 'any
24  determination, decision, or order' made pursuant to 18 U.S.C. §§ 3621–3624." Reeb, 636 F.3d at
25  1227. "To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the
26  BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621[–3624] would be
27  inconsistent with the language of 18 U.S.C. § 3625." Id. However, "judicial review remains
28  available for allegations that BOP action is contrary to established federal law, violates the

1  United States Constitution, or exceeds its statutory authority." Reeb, 636 F.3d at 1228; accord
2  Rodriguez v. Copenhaver, 823 F.3d 1238, 1242 (9th Cir. 2016) (citing Close v. Thomas, 653
3  F.3d 970, 973–74 (9th Cir. 2011)).
4        Here, Petitioner asserts that he should not have any "escape" points added to his
5  PATTERN score based on his federal term of supervised release being revoked (as opposed to a
6  judicial finding of guilt) and that the miscalculated PATTERN score is "impacting his release
7  date and the security level that he is housed at." (ECF No. 1 at 3.) The eligibility requirements
8  for applying earned credits are outlined in 18 U.S.C. § 3624(g)(1), which falls within § 3625's
9  jurisdictional bar. See Reeb, 636 F.3d at 1227 ("There is no ambiguity in the meaning of 18
10 U.S.C. § 3625. The plain language of this statute specifies that the judicial review provisions of
11 the APA, 5 U.S.C. §§ 701–706, do not apply to 'any determination, decision, or order' made
12 pursuant to 18 U.S.C. §§ 3621–3624."); Monsevaiz v. Doerer, No. 2:24-CV-09925-FLA-JDE,
13 2025 WL 808235, at *2 (C.D. Cal. Jan. 10, 2025) ("Decisions regarding a prisoner's recidivism
14 risk appear to fall within [§ 3625's] jurisdictional bar.") (collecting cases), report and
15 recommendation adopted, 2025 WL 808233 (C.D. Cal. Mar. 12, 2025). Thus, the BOP "retains
16 discretion to determine which AICs [adults in custody] meet the PATTERN eligibility standards
17 for minimum and low risk designations." Dempster v. Salmonson, No. 3:25-CV-00490-AN,
18 2025 WL 2617795, at *3 (D. Or. Sept. 10, 2025).
19       Although a district court may properly consider whether the BOP acted "contrary to
20 established federal law, violate[d] the United States Constitution, or exceed[ed] its statutory
21 authority," Reeb, 636 F.3d at 1228 (footnote omitted), Petitioner does not claim the BOP
22 violated the Constitution. To the extent Petitioner claims that the BOP acted contrary to
23 established federal law or exceeded its statutory authority, the BOP's "decision to treat
24 petitioner's particular offense in a particular way in its calculation does not run afoul of the
25 governing statutes – which means that petitioner is not entitled to habeas relief on that basis."
26 Green v. Hudson, No. 23-3115-JWL, 2023 WL 4374013, at *2 (D. Kan. June 29, 2023), aff'd,
27 No. 23-3141, 2024 WL 960497 (10th Cir. Mar. 6, 2024). Cf. Godbee v. Graham, No. 24-cv-
28 ///

0702, 2024 WL 5323825, at *5 (D.S.C. Nov. 14, 2024) ("[T]he BOP's creation of its own definition for a 'crime of violence' under the FSA is well within the agency's authority.").

Petitioner's "challenge to the BOP's assessment of his recidivism risk level is not reviewable in a § 2241 habeas petition." Tennigkeit v. Taylor, No. 24-6322, 2025 WL 618740, at *1 (9th Cir. Feb. 26, 2025) (citing Reeb, 636 F.3d at 1226–28; 18 U.S.C. § 3625). See Davenport v. Birkholz, 2023 WL 9686338, at *6 (D. Ariz. Dec. 27, 2023) ("To the extent that the Petition may be construed to claim that Petitioner's recidivism risk level should have been or should be lower than medium, this Court lacks jurisdiction to review BOP's recidivism risk level determination."), report and recommendation adopted, 2024 WL 639987 (D. Ariz. Feb. 15, 2024); Beltran v. Hendriz, 2022 WL 17813025, at *2 (D. Or. Dec. 6, 2022) (finding petitioner "cannot prevail on his claim that the BOP denied him earned time credits under the FSA due to its miscalculation of his PATTERN score").

### III.

### RECOMMENDATION & ORDER

Accordingly, the undersigned HEREBY RECOMMENDS that Respondent's motion to dismiss be GRANTED in part and the petition for writ of habeas corpus be DISMISSED.

Further, the Court DIRECTS the Clerk of Court to:

1. Assign a District Court Judge to the present matter; and

2. Update Petitioner's address to:

> FCI Phoenix
> Federal Correctional Institution
> 37910 N 45th Avenue
> Phoenix, AZ 85086[5]

---

[5] On November 21, 2025, mail was returned to the Court as undeliverable because Petitioner was no longer at his listed address. A search of the BOP's inmate locator using Petitioner's inmate number indicates that Petitioner is now at FCI Phoenix. See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/mobile/find_inmate/index.jsp (search by "BOP Register Number" for "02320-180") (last visited Nov. 22, 2025). It is Petitioner's responsibility to keep the Court apprised of his current address at all times. See Local Rule 183(b). Absent notice of a party's change of address, service of documents at the prior address of the party is fully effective. Local Rule 182(f). However, in the interest of justice, the Court will make an exception and update Petitioner's address so that Petitioner may receive the findings and recommendation and file any objections thereto.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 29, 2025**          /s/ Erica P. Grosjean
                                     UNITED STATES MAGISTRATE JUDGE